### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| CITY OF HOUSTON, | § | |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | |
| | § | |
| CONTINENTAL INSURANCE CO., | § | |
| *Defendant*, | § | CIVIL ACTION H-02-2734 |
| | § | |
| vs. | § | |
| | § | |
| UNITED WATER SERVICES, INC., | § | |
| *Third-Party Defendant*. | § | |

### MEMORANDUM OPINION & ORDER

Pending before the court is the City of Houston's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). *See* Dkt. 41. The City of Houston asserts legislative immunity from suit due to its status as a governmental entity. After reviewing the arguments of counsel and the applicable law, the City's motion to dismiss is DENIED.

### I. BACKGROUND

This case centers around a contract between United Water Services, Inc. ("United Water") and the City of Houston ("the City") for the operation of the Southeast Water Purification Plant ("SWPP"). The Continental Insurance Company ("CNA") acted as a surety for United Water on a performance bond for the benefit of the City guaranteeing United Water's performance. Issues arose near the end of the contract term when the City began to review the contract and inspect the plant before the planned turnover of operations back to the City. During its review, the City claimed that the equipment in use at the plant was not properly maintained, as required under the contract,

resulting in damages in the amount of $ 1,879,766.  United Water contested this claim and further argued that it was owed $ 64,690.88 for the balance due on work performed at the plant in addition to other contract damages for: 1) additional costs for water production exceeding 80 million gallons per day ("MGD"), 2) additional costs for new water quality standards for flow rates greater than 80 MGD, 3) additional costs for facility repairs, 5) additional costs in defending a claim by the City that it failed to comply with heterotrophic plate count testing requirements, 6) a refund for production of water at a rate less than 70 MGD, and 7) additional costs due to Tropical Storms Francis and Allison.  These additional costs bring United Water's total claim to $964,690.88.  Notably for the issues presented in the City's motion to dismiss, United Water's counterclaim seeks roughly half the damages sought in the City's original complaint, which initiated this litigation.

From early on, this case has followed two tracks.  First, United Water filed suit in November 2001 in state court seeking a declaratory judgment that it did not owe the City money under the performance bond, and that it was owed $964,690.88 resulting from the breach of contract.  The state court dismissed the suit for lack of subject-matter jurisdiction based on the City's governmental immunity, which was reversed on appeal by the Texas First Court of Appeals.  The appeals court decision was itself subsequently reversed by the Texas Supreme Court in October 2006, at which time the case was remanded to the trial court to determine if a Texas statute passed during the pendency of the appeal waived the City's immunity from suit.

Second, on the federal track, while the initial appeal to the First Court of Appeals was pending in July 2002, the City filed suit in this court against CNA seeking recovery under the performance bond.  CNA subsequently impleaded United Water, which then filed a counterclaim against the City on the same theories originally raised in state court.  The City answered the

counterclaim and alleged that it was entitled to an offset of at least $250,000 under the contract for costs savings resulting from a reduction in the plant staffing levels.  The City moved to dismiss United Water's counterclaim in early 2003, claiming that this court did not have jurisdiction over the defensive claims under the doctrine of governmental immunity.  On March 20, 2003, this court denied the City's motion to dismiss, finding that by initiating litigation regarding the contract, the City waived immunity from suit over any "counterclaims [which] arise out of the same operative facts as [its] claims."  *See* Dkt. 18 at 14.  Thereafter, the federal lawsuit was stayed pending the outcome of the state court appeal.  *See* Dkt. 23.  After the Texas Supreme Court's decision in October 2006 in the state case, the federal suit was reinstated, and the City refiled its motion to dismiss for lack of subject-matter jurisdiction under FED. R. CIV. P. 12(b)(1) & 12(b)(6).

The City argues that the Texas Supreme Court's 2006 *Reata* decision reinterpreted the extent of waivers of governmental immunity by conduct, and United Water's counterclaim falls outside of any possible waiver and should be dismissed.  *See* Dkt. 41 at 8 (citing *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371 (Tex. 2006)).  United Water disputes this characterization of the Supreme Court's decision and asserts that *Reata* should not disturb this court's 2003 ruling that it had jurisdiction over United Water's counterclaim.  *See* Dkt. 44 at 6–8.  Lastly, the City argues that United Water has not stated a claim upon which relief can be granted because a federal court sitting in diversity should not resolve issues of governmental immunity; rather, the Texas legislature alone should decide these matters.  *See* Dkt. 41 at 10.  The court will address each of these issues in turn.

3

## II. APPLICABLE LAW AND FINDINGS

*A.*     *12(b)(1) Motion to Dismiss*

### 1.     Standard of Review

In ruling on a motion to dismiss for lack of subject-matter jurisdiction, the burden of establishing federal jurisdiction rests on the party seeking the federal forum. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). For a 12(b)(1) motion, the court may weigh the evidence and resolve factual disputes. *Montez v. Dep't of the Navy*, 392 F.3d 147, 149 (5th Cir. 2004). In considering any facts, the "court may base its disposition . . . on (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id*.

### 2.     The City's Governmental Immunity

This case is a diversity action involving only state-law causes of action, requiring that the suit be governed by Texas law. *PYCA Indus., Inc. v. Harrison County Waste Water Mgmt. Dist.*, 81 F.3d 1412, 1417 & n.4 (5th Cir. 1996). The Texas Supreme Court has specifically defined two types of immunity that state governmental agencies enjoy: sovereign immunity and governmental immunity. *See Tooke v. City of Mexia*, 197 S.W.3d 325, 330 n.11 (Tex. 2006). Sovereign immunity refers to the State's immunity from both suit and liability. *Id*. On the other hand, governmental immunity protects the political subdivisions of the state from suit and liability, wherein each component may be waived separately due to various affirmative acts. *Id*. at 332. As a political subdivision of the state,[1] the City of Houston enjoys governmental immunity in Texas, including immunity from both

---

[1] The court will take judicial notice of the City of Houston's Charter pursuant to Section 9.008(b) of the Texas Local Government Code.

suit and liability.  *Id.* at 331 n.11.  However, the City may waive its immunity through certain affirmative acts.

### 3.   *Waiver of Immunity from Liability*

A political subdivision of the state waives governmental immunity from liability by contracting for services with a private party.  *Id*. at 332.  "By entering into a contract, a governmental entity necessarily waives immunity from liability, voluntarily binding itself like any other party to the terms of agreement, but it does not waive immunity from suit."  *Id*.; *see also Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401,  405-06 (Tex. 1997) ("[W]hen the state contracts with private citizens it waives immunity from liability."), *superseded on other grounds by statute*, TEX. GOV'T CODE ANN. §§ 2260.001–.108 (Vernon 2000 & Supp. 2006), *as recognized in Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 595 (Tex. 2001).  The City does not contend in its motion to dismiss that it did not waive immunity from liability by contracting with United Water for the operation of the SWPP.  The key issue before the court is whether the City waived immunity *from suit* by bringing the instant action.

### 4.   *Waiver of Immunity from Suit*

#### a.  *Basis for Waiver*

In *Reata*, the Texas Supreme Court explained the origins and reasons for governmental immunity from suit.  *See Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371 (Tex. 2006).  The reasoning behind sovereign immunity has changed throughout its history, but has recently been recognized as necessary to "shield the public from the costs and consequences of improvident actions of their governments."  *Tooke*, 197 S.W.3d at 332.  While recognizing that the legislature is generally better suited to address waivers of sovereign immunity, the Texas Supreme Court has noted

5

that the judiciary remains a guiding force in defining the boundaries of sovereign immunity and the circumstances under which immunity may exist in the first instance.  *Reata*, 197 S.W.3d at 375 ("Recognizing that sovereign immunity is a common-law doctrine, we have not foreclosed the possibility that the judiciary may modify or abrogate such immunity by modifying the common law.").  In Texas, the courts have made certain exceptions to governmental immunity from suit when the waiver of immunity comports with the underlying policy concerns associated with sovereign immunity.  *Id.*  One such exception involves the decision of a state or governmental subdivision to interject itself into litigation, an action which effects a limited waiver of immunity from suit, restricting the adverse party to certain remedies.  *Id.*  The Supreme Court has found this waiver just, because "it would be fundamentally unfair to allow a governmental entity to assert affirmative claims against a party while claiming it had immunity as to the party's claims against it."  *Id.* at 375–76.

### b.  *Limitation of the Waiver*

In order to balance the concerns underlying governmental immunity, the waiver has been restricted to only those claims which share a nexus with the governmental entity's claims.  The Texas Supreme Court has stated that "the decision by the [City] to file suit for damages encompassed a decision to leave its sphere of immunity from suit for claims against it which are *germane to, connected with and properly defensive to* claims the City asserts."  *Reata*, 197 S.W.3d at 377 (emphasis added).  When the nexus exists between the claims, "the State enters the courts . . . as any other litigant."  *State of Texas v. Humble Oil & Refining Co.*, 169 S.W.3d 707, 709 (Tex. 1943).

In ordinary parlance, the term "germane" means "closely akin," "being at once relevant and appropriate," "closely or significantly related," "relevant," and "pertinent."  *See Sweeny Comm. Hosp. v. Mendez*, ___ S.W.3d ___, 2007 WL 274188, *6 (Tex. App.—Houston 2007, no pet.) (citing

6

MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 525 (11th ed. 2003)) . The term "connected" means "united, joined, or linked" and "joined together in sequence; linked coherently" and "having parts or elements logically linked together." *Id.*

In this case, the City, not United Water, initiated suit in federal court. The City's complaint against CNA involves a claim pursuant to the surety bond for damages allegedly caused by United Water in the performance of its contract to operate the SWPP. Dkt. 41 at 1. According to the City's motion, section 3.21 of the contract required that at the end of the service period, all equipment must be fully operational according to the manufacturer's specifications. Dkt. 41 at 2. Further, the surety bond was executed in order to guarantee the performance of United Water under the contract. *Id*. United Water's counterclaim against the City for damages arises out of the same contract and relates to the extent of the City's potential liability for unpaid bills and extra work United Water was allegedly forced to perform due to changed circumstances after the execution of the contract.

For the City to succeed on its breach of contract claim, it will have to demonstrate that United Water did not perform its obligations under the contract and, as even the City recognizes in its original complaint, that "[t]he City has duly performed all of the terms and conditions of the contract." *See* Dkt. 1 at 3. Conversely, United Water's counterclaim is intimately related with the City's claim for breach of contract, as it arises from the same contract, and determining whether each party substantially performed their obligations is necessary to both parties' claims.

In support of the City's contrary contention that the parties' claims are unrelated, the City cites *State v. Humble Oil & Refining Co.*, 169 S.W.2d 707 (Tex. 1943). In a suit for back taxes, Humble Oil claimed an offset against the state for excess taxes that had previously been collected. *Id*. at 708. In deciding that the previously collected taxes were not connected with or germane to the

State's claims, the court focused on the fact that the parties' claims involved different statutory versions of the tax laws. The court stated that "we are unable to see how it can be said that the right of offset created or given by [the statute] . . . can operate to give or preserve the right to offset illegal taxes paid while such offset statute was in effect against valid taxes which did not accrue until after the repeal of such offset statute." *Id*. at 710. *Humble Oil* is distinguishable because this case does not involve counterclaims arising under different statutory enactments. Instead, all claims arise as from the performance of one contract to operate the SWPP. United Water's counterclaim is "relevant" and has "parts or elements logically linked together"; these claims are germane to and connected with the City's breach of contract claim against CNA.

Finally, with regard to whether United Water's counterclaim is "properly defensive to" the City's claim, the *Reata* Court implied that the term "properly defensive" was not intended to "restrict jurisdiction for the type of claim raised, but, rather, to restrict jurisdiction over the amount of a claim for damages against the governmental entity to the amount that the government actually recovers." *See Sweeny*, 2007 WL 274188, at *7 (citing *Reata*, 197 S.W.3d at 377 & n.3). Under this formulation, the court has jurisdiction over United Water's relevant and connected counterclaim insofar as it is not in excess of the City's claims for damages. In other words, the City continues to have governmental immunity from suit for any monetary relief exceeding the amounts necessary to offset its breach of contract claims. *See Muenster Hosp. Dist. v. Carter*, 216 S.W.3d 500, 505 (Tex. App.—Fort Worth 2007, no pet.); *see also City of Irving v. Inform Constr., Inc.*, 201 S.W.3d 693, 694 (Tex. 2006) ("[T]he City retains immunity from suit . . . to the extent [the private party's] damages exceed amounts offsetting the City's monetary recovery, absent legislative waiver of that immunity."). This possible immunity is unlikely to affect this case however, as the City's claim for

8

damages totals almost $1.8 million dollars, far outweighing United Water's counterclaim seeking approximately $960,000 in damages.

### c. Conclusion

United Water's counterclaim meets all three of the *Reata* elements necessary for an implicit waiver of immunity from suit: the counterclaim is germane to, connected with, and properly defensive to the City's breach of contract claim. For these reasons, the City's 12(b)(1) motion alleging that the court lacks subject-matter jurisdiction over United Water's counterclaim is denied.[2]

### B.    12(b)(6) Motion to Dismiss

Second, in addition to its jurisdictional arguments, the City contends that the court should dismiss United Water's counterclaim for failure to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). The City argues that this court is without any power to decide governmental immunity questions, as these are concerns dedicated solely to the province of the legislature. *See* Dkt. 41 at 9–10.

---

[2] Because the court finds that the City's commencement of this action waives its immunity to suit as to United Water's counterclaim, the court need not address the City's alternative argument that United Water did not demonstrate the existence of any applicable statutory waiver of liability. The court also need not consider the City's argument that the court should decline supplemental jurisdiction over this claim which may raise a novel issue of state law, *see* 28 U.S.C. § 1367(c)(1), because the court has diversity jurisdiction over the matter. United Water is seeking damages in excess of $75,000 against the City, and the citizenship of the parties is completely diverse. 28 U.S.C. § 1332(a); *ExxonMobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553, 125 S. Ct. 2611 (2005). The City is a citizen of Texas and United Water is a citizen of California and New Jersey. *See* Dkt. 1 at 1; Dkt. 9 at 1. Thus, the court must exercise jurisdiction under § 1332, no matter how novel the claim is, unless an abstention doctrine is applicable. Such doctrines include the "probate" and "domestic relations" exceptions to federal jurisdiction. *See Marshall v. Marshall*, 547 U.S. 293, 126 S. Ct. 1735, 1741 (2006). However, as the City has not argued the applicability of these or any other abstention doctrines in its current motion, the court itself will abstain from any further discussion on this matter and simply note that it does have diversity jurisdiction over United Water's counterclaim.

### 1.    *Standard of Review*

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).   Two primary principles guide the court's determination of whether dismissal under Rule 12(b)(6) should be granted.   First, the court must accept all well-pleaded facts as true and view them in the light most favorable to United Water.   *See Capital Parks, Inc. v. Southeastern Adver. & Sales Sys., Inc.*, 30 F.3d 627, 629 (5th Cir. 1994); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994); *Chrissy F. by Medley v. Miss. Dep't of Pub. Welfare*, 925 F.2d 844, 846 (5th Cir. 1991).   Second, and relatedly, the court can only consider the plausibility of United Water's counterclaim under the facts pled, and dismissal is proper if United Water fails to provide "more than labels, [] conclusions, and the formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. ___, 127 S. Ct. 1955, 1964-65 (2007).   In addition, a court may not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts.   *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) (citing *St. Paul Ins. Co. of Bellaire, Tex. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991)).

### 2.    *Application of the Law to the Facts*

The City argues that the waiver of immunity issues should be left to the state legislature, not a federal court sitting in diversity.   Dkt. 41 at 10.   The Texas Supreme Court has acknowledged that it is usually the province of the legislature to provide for statutory waivers of sovereign immunity. *Reata*, 197 S.W.3d at 375.   However, as a judicially-created doctrine, the court retains the power to modify the circumstances under which immunity may exist in the first instance.   *Id.*   Here, the original issues of legislative waivers have been settled through the decision of the Texas Supreme Court in

the state court proceedings.  This court's finding that the City has waived its immunity from suit through the commencement of litigation is based on recent precedent from the Texas Supreme Court and Texas appellate courts.  This court has not intruded the legislature's sphere of action; instead, it has properly exercised its judicial role in interpreting Texas common law to find that the court does have jurisdiction over United Water's counterclaim.  The City's 12(b)(6) motion is therefore denied.

### III. CONCLUSION

The City's motion to dismiss under both FED. R. CIV. P. 12(b)(1) and 12(b)(6) centers on an assertion that United Water has failed to establish a waiver of the City's immunity from suit.  Based on the jurisprudence of the Texas Supreme Court, the court finds that the City's instigation of litigation in federal court waived the City's immunity from suit.  This waiver gives the court jurisdiction over United Water's counterclaim which is "germane to, connected with, and properly defensive to" the City's claim.  *See Reata*, 197 S.W.3d at 377.  Furthermore, the court can grant relief against the City through the interpretation of state law without invading the legislative domain.  Accordingly, the City's motion to dismiss United Water's counterclaim (Dkt. 41) is DENIED.

Signed at Houston, Texas on July 26, 2007.

_____
Gray H. Miller
United States District Judge

11